Estate of William Carey Coffin, Deceased, Mary Coffin Clarke, Executrix v. Commissioner.
Estate of William Carey Coffin v. Commissioner
Docket No. 21862.
United States Tax Court
1950 Tax Ct. Memo LEXIS 7; 9 T.C.M. (CCH) 1129; T.C.M. (RIA) 50303; December 20, 1950
H. P. Forrest, Esq., for the petitioner. S. Earl Heilman, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent determined a deficiency of $6,321.89 in estate tax against the Estate of William Carey Coffin. The issues now to be decided are (1) whether the respondent erred in including in the gross estate as gifts in contemplation of death the value of securities transferred by decedent to his daughter in 1943 and 1944, (2) whether he erred in disallowing a deduction covering cash in the amount of $2,064.80, claimed as property previously taxed, and (3) whether he erred in including in the gross estate a dividend of $25 on 50 shares of Commercial Credit Corporation stock payable to stockholders *8 of record on December 5, 1944, but traded ex-dividend on December 4, 1944. In issue also is the amount of litigation expenses incurred or to be incurred in this proceeding. The respondent concedes the deductibility of such expenses upon presentation of adequate and acceptable proof and agrees that effect may be given thereto in any recomputation of the deficiency made pursuant to the findings and opinion of this court. The parties have also stipulated the value for the purposes herein of 175 shares of common stock in Emerald Coke and Coal Company. Findings of Fact Wiliam Carey Coffin died testate on December 4, 1944, in Miami Beach, Florida. His daughter, Mary Coffin Clarke, the sole heir, legatee and devisee of his estate, qualified as executrix on January 4, 1945. The estate tax return was filed on February 28, 1946, with the collector of internal revenue for the district of Florida. The decedent was born September 7, 1862 in Pittsburgh, Pennsylvania. He was graduated in 1883 from Western University of Pennsylvania, now the University of Pittsburgh. In the course of his business life he was an officer of the Blaw-Knox Company of Pittsburgh. He retired from active service *9 in 1923. At the time of his retirement his post of duty was in the New York City office of the company. He maintained an apartment in New York City for himself and his family. After his retirement the decedent purchased a home in Miami where he and his wife, Vida Hurst Coffin, began spending their winters. Sometime thereafter, the exact date not being shown, the decedent established Miami as his residence. Decedent's daughter was married in 1922 to Kenneth K. Clarke and in February of 1944 she and her husband moved to Miami. They had three children, two boys and a girl born in the years 1924, 1926 and 1929. The decedent and his wife were very devoted to these grandchildren and were particularly interested in the education and maintenance of the granddaughter, who was the wife's namesake. Decedent's wife had said before the granddaughter was born that if she were a girl and named for her she would dress and educate her. On July 11, 1938, the decedent executed four trusts for the benefit of his daughter and his three grandchildren. The principal of these trusts consisted of $200 in cash and 300 shares of Blaw-Knox Company stock. On December 26, 1941, he added bonds with a face *10 value of $2,500 to the principal of each trust. Under each grandchild's trust the corporate trustee was directed to pay over the trust income to the decedent's daughter for the benefit of the particular grandchild. In the event of the daughter's death during the minority of a grandchild the trustee was directed to pay the income and such portions of principal as might be necessary and advisable "direct to a school or institution of higher learning as the case may be for tuition, board, lodging, incidental expenses, and education" of the said child. In the trust for the benefit of the decedent's daughter it was provided that in the event of her death before the majority of any of her children the corpus and accumulations of her trust were to be added to the corpora of the children's trusts, subject to the terms and conditions of the said children's trusts. Vida Hurst Coffin, decedent's wife, died in Pittsburgh on September 18, 1940. Decedent and his daughter, May Coffin Clarke, were her sole heirs and each received on distribution of her estate on September 6, 1941, approximately $41,000 in cash and securities. Among the securities received by the decedent were Champion Paper and *11 Fibre bonds. These bonds were called and redeemed shortly thereafter and the proceeds, $2,064.80, were deposited on December 5, 1942 by decedent in his bank account with the Union Trust Company of Pittsburgh. By such deposit the proceeds of the said bonds were commingled with a previously deposited balance of $3,814.08. At all times thereafter and up to the date of decedent's death the balance in the account was never less than the $2,064.80 received in redemption of the Champion Paper and Fibre bonds. During the years 1940 through 1943 the decedent's daughter and her family lived on a modest income. She was teaching school at a small salary and her husband was engaged in a poorly paying position of selling real estate. Their combined net incomes as reported for Federal tax purposes during those years averaged approximately $2,500. In 1941 their elder son entered Cornell where where he stayed until called into the armed services in February 1943. In September 1943 the daughter, who had been named Vida for her grandmother, entered Smith College. The younger son was attending Miami High School. Because of the limited finances of his daughter's family and by reason of his devotion to *12 his grandchildren and his particular interest in the educating of his granddaughter, the decedent made several gifts to his daughter. On November 14, 1943, he made a gift to her of 50 shares of Aluminum Corporation of America stock having a value of $5,700 at the time of his death. On August 1, 1944 he gave her 100 shares of Consolidated Edison Company stock which at the time of his death had a value of $2,450. A third gift was made on August 4, 1944, 100 shares of Pennsylvania Railroad Company stock valued at $3,025 at the time of his death. These totaled $11,175 or approximately 4.3 per centum of the decedent's gross estate of $260,372.65, as determined by respondent. The decedent at the time of his death was the owner of 50 shares of Commercial Credit Corporation stock. On some date not shown that company declared a dividend on its stock payable to stockholders of record on December 5, 1944, and at the time of decedent's death on December 4, 1944, the stock was being traded in ex-dividend. The decedent executed a will on March 7, 1941, and a new will on March 28, 1943, the latter of which became his last will and testament. Nothing in the will indicated any connection with or *13 relation to the gifts made by petitioner to his daughter in 1943 and 1944 as set forth above. %although retired from active participation in business the petitioner after moving to Miami devoted much of his time and energies to the building of the University of Miami. Dr. Ash, its president, had been his friend back in Pittsburgh and that friendship continued in Miami. On February 2, 1935, he was elected chairman of the board of trustees of the University, which position he held until his death. The University was young and much labor and effort were required in order to establish it firmly on a sound financial basis. Petitioner directed his energies particularly to that end. Petitioner's health had always been good and after his wife's death in 1940 he traveled a great deal making most, if not all, of his trips alone. He toured South America, made a trip to Texas, traveled to California, and visited his grandson in Connecticut. In the course of these travels he used bus, tain or plane transportation. On December 2, 1944, the decedent suddenly became ill. At 12 o'clock noon he was admitted to the St. Francis Hospital in Miami. About forty-nine hours later, on December 4, he died. *14 The hospital record listed the cause of death as coronary arterial thrombosis, myocardial infraction, and terminal bronchial pneumonia. His age was shown as 82 years. On the estate tax return a deduction of $40,796.37 was claimed as property previously taxed in the estate of decedent's wife. Of that figure $2,064.80 represented the cash received on the redemption of the Champion Paper and Fibre bonds above described. In determining the deficiency this deduction was disallowed by the respondent on the ground that the said sum had not been identified as property previously taxed. In determining the deficiency the respondent included in the gross estate of the decedent the sum of $11,175 representing the value at decedent's death of the securities transferred to his daughter in 1943 and 1944. He also added to the gross estate an amount of $250.92 as the dividend declared but not paid at decedent's death on the 50 shares of Commercial Credit Corporation stock. The parties have stipulated that the correct amount of the dividend in question was $25. The gifts of securities made by decedent to his daughter in 1943 and 1944 were not made in contemplation of death. Of the balance on deposit *15 on the date of decedent's death in his bank account in the Union Trust Company of Pittsburgh, $2,064.80 represented the proceeds from the redemption of the two Champion Paper and Fibre bonds received by decedent as an heir of his wife. Opinion The first issue presents the question whether the gifts of securities by decedent to his daughter in 1943 and 1944 were made in contemplation of death. Not only do we find nothing of record to indicate that the transfers in question formed any part of a general testamentary plan of deceased, but to the contrary the record does show that they represented comparatively modest gifts made by decedent to his daughter at a time when added funds were needed for the maintenance and education of decedent's grandchildren. Since the birth of his grand-daughter, Vida, it had been the purpose first of the decedent's wife and then of the decedent to contribute to her education. The first of the gifts was made within a few months after Vida entered Smith College. On the facts of record, it is our conclusion and we have found as a fact that the transfers in question were not gifts made in contemplation of death. See United States v. Wells, 283 U.S. 102. *16 The second issue question the deductibility under section 812 (c) of the Internal Revenue Code[1] of $2,064.80 as property previously taxed. This amount represents a portion of the balance on deposit at the date of decedent's death in his bank account in the Union Trust Company of Pittsburgh. He had previously deposited that sum representing the proceeds from the redemption of bonds received by him as an heir of his wife. That sum upon deposit was commingled with other moneys then standing in the decedent's account and was never thereafter separately identified. The balance in the bank account, however, was never thereafter less than $2,064.80. Except for Rodenbough v. United States, 25 Fed. (2d) 13, the established rule in cases such as this appears to be that so long as the balance in the bank account never falls below the amount of prior taxed property which has been deposited in the account, the full amount of such prior taxed property is to be regarded as remaining in the bank account and deductible from the gross estate as property previously taxed. See Estate of Lillian Mae Schroeder, 13 T.C. 259; Estate of James Miller, 3 T.C. 1180 *17 and the cases cited therein. Under authority of the cases last cited it is held that $2,064.80 of the decedent's bank account in the Union Trust Company of Pittsburgh is deductible under section 812 (c), supra, as property previously taxed. With respect to the $25 dividend on 50 shares of Commercial Credit Corporation stock declared but not paid at the time of decedent's death, the situation *18 is for all practical purposes the same as that dealt with in the Estate of Merritt J. Corbett, 12 T.C. 163, and on authority of that case the action of the respondent in including the amount of the dividend in the gross estate is sustained. With respect to other issues effect will be given to the agreements of the parties pursuant to Rule 50 of the Court's Rules of Practice. Decision will be entered under Rule 50. Footnotes
1. SEC. 812. NET ESTATE. For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate - * * *
(c) Property Previously Taxed. - An amount equal to the value of any property (1) forming a part of the gross estate situated in the United States of any person who died within five years prior to the death of the decedent, or (2) transferred to the decedent by gift within five years prior to his death, where such property can be identified as having been received by the decedent from the donor by gift, or from such prior decedent by gift, bequest, devise, or inheritance, or which can be identified as having been acquired in exchange for property so received. * * *↩